This is the case of Guyton v. Tyson. Thank you, Your Honor. May it please the court. In this case the jury decided that the this work we've been discussing is work but it's not integral and indispensable. We contend that it was that that issue should not have been submitted to the jury because this plant, Columbus Junction plant, was under a permanent injunction which held that the work is integral and indispensable. I have a big problem here off the bat. Question number one has two parts, right? In the brief, Your Honor? No, question number one on the verdict form. Oh, okay. Yeah, on the verdict form, you know what I'm referring to, I bet. Yes. It has two questions, two parts, two yeses and nos, right? Yes. And as I read what the district court said, it says plaintiffs have no objection to subpart two of question number one. Correct? So you didn't object to that? Once our Rule 50 motion was denied, see, we're not, we're saying that this issue should be taken. Counsel, let's go slowly. Plaintiffs have no objection to subpart two of question one. That's true, right? You didn't object to subpart two, correct? We did not object to subpart two. And you objected to subpart one, right? Yes. Well, let me say, when you said, as a jury instruction. Counsel, I'm looking at what the district court said. You go further with me if you say yes or no and then I'm going to let you talk. I promise. Going on memory, I. You didn't object to subpart two of question one. As a jury instruction, that's correct. Correct. Going on memory. Yes, sir. But you did object to question number one, right? Question number one of the proposed verdict for him. I read you the whole thing if you want to make this really painful. No. Okay, good. This is the easy way. That's true, right? You didn't object to subpart two of question one. You objected to subpart one of question number one, right? As a jury instruction. Yeah. Okay. Now tell me why that doesn't make pretty much handle this whole case. Those simple facts. Because that's not a jury instruction question. There's nothing wrong with that question, uh, as a jury instruction, but there's something wrong under rule 50 of letting a jury have an issue for which there's no evidence. And what I mean by that is this, this plant had already been enjoined to pay and treat this work as compensable. The jury was allowed to say, no, it's not compensable. The Supreme Court had already held in Alvarez that the walking and washing time is compensable, but the jury was allowed to say, no, it's not compensable. The management witnesses admitted that you can't cut meat without these knives, hooks, steels, and other implements. That was not the plaintiff's job even though. Their job was not just to cut meat, but to cut meat safely and in a sanitary manner that doesn't contaminate the product. And so Tyson absolutely required them not just to go to the locker as in, in, uh, Alvarez and get their knives, hooks, steels, chains, scabbards, which, but also get the safety equipment that would allow them to use those knives, hooks, steels in a safe and sanitary manner. So was it undisputed that Tyson was to compensate for donning and doffing of unique items like knives? That's the holding in, uh, Reich versus, uh, uh, IBP, IBP, which was, which is now Tyson. That permanent injunction holds that, that, that work and the time that comes after it in the continuous work there, the walking, the washing is compensable and they are, as we speak, permanently enjoined to pay that work. How then can we, uh, under rule 50, submit that to a jury and say, well, is it, what was the judge who entered the permanent injunction right or wrong? That's not permissible. So was the effect of the jury's verdict a reversal of an injunction? It's a nullification of the injunction. And it's, it's totally contrary to all the evidence in the case. The management witnesses admitted that this, this work is integral. And then these items are integral and indispensable that you, they are required on pain of discharge to go to that locker, get those knives, hooks, stills, and other things that go with the knife safety and the sanitary equipment and take it to the line, sanitize it on the way and be on the line before paid time begins. What was the district court's rationale for submitting a question such as this to the jury under the representation that you make now about its characterization? It just never really addressed the question of, of, uh, Alvarez and Reich. Uh, and the, it just decided that there were factual issues. There were some factual disputes that had to be tried and that got swept in with it. Council. Now there's an instruction five defining these terms and instruction five to the jury. The issue of work is divine, defined differently than the issue of integral and indispensable. Do you agree with that? Yes, I do. Okay, great. There's one, there's three elements. One's different and the one is different. Is that the necessary to principal activities? Okay, good. We're making progress. Uh, now couldn't they find, couldn't the jury find that? Yeah, the knives are, uh, necessary to the principal activities, but a lot of this other stuff isn't. You could take it home. You didn't have to wear it. The employee got a choice. The knives are only what, 30 some percent. So could that sustain the jury's verdict? No, because Alvarez, the Supreme court rejected that only rejected as the 35% not as to 65%. No, what Alvarez says is that once the, the, the, the, the other items that come after that, including the walking, the washing, the sanitizing and other equipment that you pick up is part of the continuous work day. They don't have, each item doesn't have to itself be integral and indispensable. What has to be integral and indispensable is the first item that starts the continuous work day. The Supreme court held that is what's called in the statute, the place of performance. The question is what is the place of performance that those are statutory terms. And the Supreme court said the place of performance at Tyson is the locker. That's where the employees are required to go to get the equipment. And that's where the continuous work day begins. So, uh, the, the jury was not permitted to then say, well, we disagree that the continuous work date didn't really begin. And that's what they did. The identical facts, the identical policy, you know, Alvarez involves is very same four minute policy. It's a centralized policy that applies to 11 plants, all 11 plants under the same injunction. You just can't allow a jury in this way under rule 50 to substitute this judgment after their permanent injunction has been issued. So in verdict form, question number one, they shouldn't have been given two questions, right? Once the rule 50 motion was denied, uh, that, that question is not an incorrect question. Well, it shouldn't be in two parts counsel. It shouldn't be in two parts to them under your theory of the case, right? Question number one, shouldn't have the two yeses and nos. It all be one or the other. Now I'm remembering the yes, the questions as the first one is about work. And the first one is it is work within the meaning of SLS a check. Yes. Check. No. The second one is it is integral and indispensable to a principal activity, such that it starts and ends the continuous work day. There are two of them there. You say there should be one, right? No, I'm saying that the permanent injunction had already ruled on both of them. Why'd you ask the jury two questions then? Because we had already been denied. I rule 50 motion had already been died. This case is now going to go to the jury and we're going to have to instruct the jury as if the injunction doesn't exist. I couldn't, I can't tell you even standing today that that instruction in the absence of the injunction in the absence of Alvarez at the Supreme court level is wrong. But I can tell you that with Alvarez and with the injunction and with the evidence in this case, those questions should not have been submitted to the jury. Well, you objected on that ground and you cited Roush offer Alvarez and prayers on sub part one, but not on sub part two. So is this such a manifest error that we should correct it? It, it rule 50 it, the purpose of real 50 is to require juries to conform to the law. They did not conform to the law. They, they took what Alvarez, uh, ruled and did the opposite. They took what Reich permanently enjoined and they did the opposite. They took the management admissions that this work is necessary that you'll be disciplined if you don't do it and did the opposite. And we're saying that under rule 50 standard, which is the issue can only come out one way. That standard is, is, uh, satisfied. And the, that, those, that question, the second one should not have gone to the jury because it'd been ruled on and it's in not in dispute. Uh, and it's not in dispute, uh, that that work was not paid for that. They paid zero for the walking and washing time held compensable in Alvarez. They paid zero for, uh, while they paid four minutes for the, for the, the knife related activities. But the jury couldn't even get to the question of whether the four minutes was enough or whether the zero was permissible because they found it wasn't liable to begin with. It wasn't compensable to begin with. And, and of course the defendant is saying, well, that's an independent ruling that moots the air on question one, but it's not the, the, once the jury found the work was not even compensable, well obviously they're going to find zero damages. It would be irrational to answer that other question with a monetary amount when you said it's not compensable, it's not liable to begin with. Were all the members of the class here knife users? Uh, people rotate jobs. Their, their duties change. You don't have the same jobs from  the beginning. But you're, you're seeking damages for each day that they, they worked. And so what you're telling me is that on some days, not all of the members of the class were knife users. Is that . . . Some days, uh, uh, an employee may not be a knife user. Well, if, if, if they were not all members, if all the members didn't use knives on a day, uh, if all the members of the class weren't knife users, how, how was for those people, was it integral and, uh, important part of their workday as a member of the class? I, I don't see how, you're mixing up apples and oranges here again on damages for members of the class. Well, it . . . You don't break, you don't break that out individually for these people, do you? Uh, it, it, it, there's no records that would allow you to do that. Yeah. That goes back to the Mount Clemens. One of the problems with class actions in these kinds of cases, right? No, there's a problem with not complying with the statute, which requires the, the, the wage records, the time records to be kept. And that's what Mount Clemens is about. That when the, when you don't comply with the statute, you can't, the court is not supposed to give the employer a leg up for that violation. Uh, but the, uh, problem is that the, uh, both groups, knife and non-knife, were paid nothing. The policy to pay nothing from 2004 to 2007 applied to everybody. It didn't vary by knife or non-knife. The amount of damages for everybody varied because there was a different amount of damages for those that were knife users on the days, in your argument, on the days that they were knife users than the people that weren't. And, and so it wasn't an integral and indispensable part of the workday for those that weren't. Uh, was it? I, I'm, I'm, you've lost me a little bit here on. Well, the, the, the, the jury found that the knife users, the work, even the knife user work is not compensable. It also found that the days that you were a non-knife user was not compensable. They, on question one, they found both knife and non-knife, it's work. Question two, for knife and non-knife, is not integral and indispensable. The jury did not separate the two. We, we argued that the way to handle this is through Rule 50. The knife user should have been granted a Rule 50 motion. That jury should not have been ruling on the knife-related parts that had been held compensable in Alvarez and enjoined in Wright. So the, the judge should have ruled as a matter of law the damages for the knife users. Is that what you're saying? That's, that's our, that's the point of our appeal, that we satisfy the Rule 50. And they would have been out of the class, or they've been out of the lawsuit, or how would that have been handled with vis-a-vis the rest of the class? Well, the, the damages for, for those days would be set because there's only an issue of damage. Once, once you admit you didn't pay for work that you've been enjoined to pay, that's been held compensable, the only issue left is, well, how much back pay is there? Was there evidence as to how many days somebody was a knife user and somebody, how many days they weren't, or anything like that? The records, the records were not kept in that way. And Mount Clemens, it would be your argument, Mount Clemens Pottery would allow the jury to speculate or estimate on those kinds of damages, right? Yes, sir. Subject to the employer's right to come forward and satisfy its more precise estimate. You know, its burden is to, once an approximation is put in with the best inference possible, because you don't have the records, the employer then has a full chance to come in and prove with a more precise set of evidence who was doing what when, or give an estimate of it. But that's not our burden, because we don't have access to management in the same way. We don't have access to the evidence in the same way, and that's the very point of the Mount Clemens holding. Thank you, Mr. Wiggins, your time has expired. Thank you, Your Honor. Mr. Mueller? May it please the Court, I will address Mr. Wiggins' points, but I would like to start with a waiver issue, which we believe allows this Court to dispose of all the trial issues that were raised by the appellants. As the Court's just been discussing, the jury independently found $0 in question three, and I am going to argue why it is clearly independent. Instruction number two on the jury instructions, which the plaintiffs did not object to, said the named plaintiffs must demonstrate the elements of their claims for each member of the class, which goes to Judge Beam's just last question to Mr. Wiggins. The plaintiffs did not take the position that Mount Clemens required them to approximate for some people or not others. They agreed to a jury instruction they had to prove their elements of each claim for each member of the class. In an unpaid overtime case, that's what you've got to prove for each class member under Lopez and Carmody. There's two ways of analyzing the waiver problem here. One is what the courts have called the waiver doctrine, which is discussed in Wright and Miller and all the court decisions we cite on page 23 of our brief. I won't get into a deep discussion of this, except that there's a great discussion at Wright and Miller by Professor Ed Cooper about why there's various labels the courts of appeals have used for these doctrines. Sometimes they're called Law of the Case, sometimes Waiver Doctrine, sometimes Harmless Error. It doesn't matter. All the courts, including the Eighth Circuit going back to at least 1902, as the court said in Mucheika, have applied a doctrine that says if there is something that you were hurt by in the district court or grieved by, and you don't raise it on appeal, that's it. It's it for later proceedings in the same appeal. It's true on remand to the district court, and it's true on a second appeal. Mr. Wiggins argued in his reply brief that, well, we'll get to that when we get to the second appeal. He's asking you to send it back down, and then we'll have a case. Even though it's been adjudicated, there's zero damages. And then he's not barred until he comes up here a second time. But this court actually dealt with that issue in Bathia v. Levi-Strauss. It's not in our briefs, because I didn't know he was going to argue this. 916 F. 2nd at 453, this court's decision in 1990, and it said that an ADEA plaintiff pursuing a Section 216B claim, analogous to here, ADEA claims are like FLSA claims, if the plaintiff had lost on front pay damages and equitable relief in the district court, and did not cross-appeal that, even though the plaintiff was the appellee, that plaintiff was forever barred back in the district court from raising those damages again. And we've cited a number of other cases that discuss this principle. Carmody says it as well. It says if there's a failure to prove damages, it renders the other elements of the case immaterial. And that's not a class action, but it is making the point that once there's no damages, there's no case for unpaid overtime. Now Mr. Wiggins just argued that Question 3 was not independent. He says it's obvious to him that the jury's answer of zero damages was infected, my word, not his, by their ruling on Subpart 2 of Question 1. That can't possibly be true, and here's why. First of all, Jury Instruction 8 said, if you find in favor of the plaintiffs on one or more of their claims, then the plaintiffs are entitled to recover damages. The judge said it that way because he wanted the jury to think Subpart 1 and Subpart 2 of Question 2 were different claims. He didn't call it a liability problem, and in fact, it's not a liability problem. They're independent grounds that the plaintiffs both have to satisfy to establish compensability. But then you go on to analyze liability. How do we know the jury went on and it wasn't infected? Turn over to the second page of the jury verdict form. They considered our defense, our de minimis defense. Why would they have done that if, as Mr. Wiggins says, the jury thought we weren't liable? They didn't. They went on to answer Question 2, which is what the jury director says to do if you answer yes to either part of Question 1. They considered our defense of de minimis, and they rejected it. Okay, so now they think that there's a question of liability if they can prove unpaid overtime for each member of the class under Instruction Number 2. They clearly concluded the problem here was you could not prove unpaid overtime for each member of the class. What about Question 4 you left out? Maybe they bought your good faith. Well, no. The judge independently instructed the jury, and we had a long discussion with the judge about this, that he wanted a special verdict form so that there could be an independent basis for that. And at the end of Jury Instruction 9, I think it's the end of the penultimate paragraph, it tells them, you are not to allow your consideration of the good faith defense to affect your determination on the other issues in the case. And as we all know, juries are presumed to follow their instructions, and the plaintiffs do not argue, to your honors on this appeal, that the answer on the good faith infected any other part of the deliberations. So clear... I have 9. Tell me where it is in 9. You have 9 handy. And I think I'm looking at the right set of instructions. He says... Final instructions to jury. I'm looking at the right instructions. Go ahead. Page 16 is something. Document 329 is what I'm looking at in the district court. Page 16. We'll find it if you can't. I'm certain there's a sentence in here that says... At the end of the preamble on page appendix 282, it's before you get to Rice v. IBP, it says that... The policies you're considering should not affect your independent judgment on the facts in the law as I've instructed you in this case in deciding whether the pre-shift and post-shift dawning and doffing at issue is compensable. So he... But it doesn't say not to check what you should fill in question 3. It doesn't refer to question 3 at all. I took that... It goes on to say... And whether Tyson Foods has paid sufficient compensation for these activities. That's question 3. So he's saying don't let it affect your deliberation on questions 1, 2, or 3. That's what the second part of that's saying. It's not very clear, is it? You think it's clear. Well, it's not only clear. If your honor doesn't think so, it's waived. They don't argue the jury's answer to good faith infected any other part of the deliberations. The reason it's not briefed is because they didn't argue that. I would like to address some of the points Mr. Wiggins said and then get to the meal period which maybe they've just dropped from the case. But it should be dropped from the case as Judge Jarvie properly dismissed it. Let me talk about the Reich injunction. First of all, the plaintiffs waived this argument in the district court. They argued... When we moved to consolidate all these cases for multi-district treatment for pretrial purposes, Mr. Wiggins filed a brief on behalf of the clients in this case and all his other cases saying each case had to stand on its own facts. That's at the last page of our appendix, page 533. He won that motion, so he's now judicially stopped to argue otherwise. But in their summary judgment motion in this case, they took the position Reich was obsolete. They opposed it every stage before trial. Counsel, isn't it undisputed that... I remember a 30% number. You need to correct me and tell me what my 30% number is. I thought 35% of the time was spent on knife activities. It's 35 to 40% did not use knives, 60 to 65% used knives. I had it the wrong way. But it doesn't mean they're always using the knives. Thank you. I had it the wrong way. And there's no evidence in the record on who those people were. And so here's... So it was disputed. Mr. Wiggins in his argument told you it was undisputed that we have to pay for these activities. We made that stipulation in the Bufaccio case, in the first appeal, but not here. And here's why. Because they wouldn't agree with us that Reich was binding. Half of the Reich case went our way. The Tenth Circuit agreed with us. We didn't have to pay for any of the standard items of the sanitary garments. And it was only when they lost summary judgment, they suddenly glommed on to a new theory of the case, that they wanted to claim Reich was controlling for some things and not others. Well, now, counsel, they objected to subpart one of question one of the verdict form we keep talking about. And they said knife-related activities is the reason they're objecting. Is that enough? Correct. Correct. And they limited it only to question one, subpart one. As Your Honor pointed out, they didn't make this objection on the Portal Act. And guess why? Because we're the ones who won Reich in the Portal Act. He didn't want to preserve that point on Reich for the question that they lost on in front of the jury, because the Tenth Circuit had previously ruled it wasn't compensable. So it wouldn't be binding on us. Or if it was, it would help us, not him. That's why they didn't object to subpart two. That's probably dispositive, except I would also point out, they made motions in limine, arguing that Reich was obsolete, and it was only in their Rule 50 motion, after they'd waived on the jury instructions, that they suddenly tried to argue Reich was binding. But even if it's binding, it's moot. It doesn't matter, because they won the work question. So the one thing that we lost on in Reich, we lost on in this case as well, the work part. So it doesn't really matter. On the knife-carrying theory Mr. Wiggins just argued about, he said that the Alvarez court said you had to pay for knife-carrying. There was no such theory in the district court in this case. It was made up for this appeal. The complaint doesn't talk about knife-carrying. There was no request to put in a jury instruction on knife-carrying. None of the jury instructions talk about anything except donning and doffing of articles of clothing, and the jury verdict form talks about donning and doffing of items. There was no claim in the district court about carrying knives, so it's been waived. And it wouldn't matter, because as Judge Beam pointed out, we don't know who used knives and who didn't. And in fact, one of the four plaintiffs who testified, out of the 3,000-plus plaintiffs in this case, was a woman named Michelle Leffler. She said 40% of the time she donned her knife-related items on the gang time. And why is that? Because as Mr. Wiggins said, they rotate. Well, that means that people who wear the non-compensable items are doing their dressing on unpaid time, and that's fine, according to the jury and the Tenth Circuit's opinion in Reich. And she said 40% of the day, she only put on those knife-related activities that Mr. Wiggins is complaining about now on paid time. That's at pages 1321 to 1322 of the transcript. On the Alvarez decision, the Alvarez decision wasn't binding. It said that it assumed that knife-related activities were compensable. You mean the Ninth Circuit, right? And Alvarez? Well, I'm talking about the Supreme Court. That is, the Ninth Circuit ruled that the knife-related activities were compensable. We won in that case, and on the standard items and sanitary garments. The sanitary garments, for reasons that don't apply here, but basically, I'm saying the de minimis defense, because we lost that in the jury here. But what I'm saying is the Supreme Court held only that walking time was compensable, and they expressly say they were holding only on the walking time issue. They just assumed the activities were compensable, because coming out of the trial and appeal in that case, we didn't challenge the compensability of those activities. So the holding, which is that walking time is compensable, is non-controversial, and we accept that, and the jury was properly charged here. Mr. Wiggins says— Counsel, let me ask you a question. The issue of whether something's covered under FLSA, is that a question of law? No, Your Honor, and here's why. This issue was before the court in Lopez. There was a lot of briefing on it. The court didn't hold on it, because plaintiffs had waived the issue. In Skidmore v. Swift, the Supreme Court said all cases under the FLSA must be decided on their own facts. The Eighth Circuit has cited Skidmore v. Swift for this proposition innumerable times. Once the facts are resolved, the final question as to whether something is or is not covered by FLSA is— Only if the facts are undisputed. That is, if the facts are undisputed, the court can apply the law to those facts, but that's true of any issue on summary judgment. Where facts are disputed, this court has consistently said juries must decide them. This court said so in the Cross v. Arkansas Forestry Commission case, May v. the Arkansas Forestry Commission case. It said so in Lopez implicitly, because in Lopez, if Mr. Wiggins' theory was right, that Reich and Alvarez disposed of the issues, we wouldn't have had a trial in that case, let alone an appeal where we won in this court. So wasn't it undisputed factually that donning and doffing unique items was something that was compensable? It was disputed in this case. We stipulated to that only in the Bufaco case, but once the plaintiffs were taking the position we couldn't get the benefit of Reich, and the plaintiffs argued that Alvarez had changed the law in this area. Judge Jarvie accepted that and said, you know what, we'll let a jury decide. We'll charge them properly. They don't appeal on the way the judge charged them about the meaning of Alvarez and Reich. In fact, Mr. Wiggins says the jury didn't know that we were already held to pay for these activities. That's not true. The jury was expressly told in Jury Instruction 9 the entire history of the Reich case, and was told the history of the Alvarez case in the Supreme Court. So they knew full well that there had been a prior injunction. The point was we reached an agreement with the Department of Labor afterwards that said we only had to pay four minutes for these activities, and that was what the good faith defense was about, which since he didn't address I'd rather move on to the meal period if I may. I'm into my yellow time. So the answer is there's no question that this court has consistently ruled that disputed facts must be decided by juries. On the meal period, Judge Jarvie granted a summary judgment on the meal period. We had nearly the same argument in the Lopez case in 2002, as Judge Benton's opinion for the court said two things are clear. The test in this circuit is predominant benefit, and second, this court in Lopez said the plaintiffs cannot get around that test by seeking to carve out portions of the meal period and claim they're only suing for the minutes at either end of the meal period. That's this court's decision by Judge Benton at 690 F. 3rd, page 881. Here the Guyton plaintiffs in this case don't deny that they had pursued nearly the identical theory in the district court in the Lopez case and lost it on appeal. Here their theory was that other than the four to five minutes maximum of closed changing time, the rest of it was for their benefit. They stipulated that at stipulation nine in the joint pretrial order. And now on appeal, they're shifting to a new issue called the mid-shift shutdown theory. There was no such case tried or presented to either the district court on summary judgment or the jury. They have no response. And we point out in our brief that there was no such theory in the district court. They cannot now appeal a theory they didn't pursue below. We would ask the judgment be affirmed. Thank you, counsel. Does the appellants have any more time remaining? All right. Thank you, counsel. We appreciate your presence and argument this morning and the briefing which you submitted. Again, this is going to be a meaty matter to figure out, but we appreciate your help in doing so. And consider your case submitted, and we'll get it done as best we can. Thank you.